DOMENGEAUX, Judge.
This appeal results from an intersectional automobile accident which occurred on November 17, 1976, in Lafayette, Louisiana. Plaintiff, Donald R. Bates, was operating his own automobile. He filed suit against the alleged responsible parties, and, after trial, was awarded judgment in the amount of $4,310.76. This consisted of $2,000.00 for personal injuries, $429.50 for medical expenses, $1,500.00 for damages to his automobile, $256.26 for car rental, and $125.00 for expert witness fees. He appeals, questioning the adequacy of the amount awarded him for personal injuries. The defendants were Mrs. Isabel Garrett, the driver of the other vehicle, Garrett Marine Supply, Inc., the owner of the vehicle, and the liability insurer, Hartford Accident & Indemnity Company. They have answered the appeal, seeking a reduction in the judgment and, alternatively, contending that the trial court erred in holding Mrs. Garrett guilty of negligence and/or Mr. Bates free of contributory negligence.
The trial judge, who rendered written reasons, found that Mrs. Garrett ran a stop light, thereby causing the accident, as Mr. Bates was properly proceeding through the intersection. He found that Mrs. Garrett’s negligent failure to stop her car at the control light was the sole cause of the accident, and that plaintiff committed no act of negligence contributing to the collision. Our thorough review of the record discloses no manifest error and, in fact, shows that the factual findings are correct.
Defendants argue that, if Mrs. Garrett had lawfully entered the intersection prior to Mr. Bates, she would have pre-empted it, and the doctrine of pre-emption would *1173 thereby bar plaintiff from recovery under La.R.S. 32:232.[1]
The record provides no basis for finding that Mrs. Garrett was lawfully within the intersection or that Mr. Bates had entered the intersection immediately after receiving a green signal without allowing a reasonably sufficient time for vehicles already in the intersection to clear.
Defendants also argue that La. R.S. 32:124[2] should bar plaintiff from recovery, inasmuch as that statute placed a duty on plaintiff, who was leaving a shopping center roadway, to yield to all traffic on the public highway, notwithstanding the fact that the shopping center exit was controlled by the traffic signal in question. We disagree. Our laws must be construed together so as to give meaning to all provisions, if such an interpretation is possible. To hold that this statutory provision applies even when a traffic control signal is in operation at an intersection, and is, at the time of the accident, in favor of the crossing motorist, would not only create havoc, but would leave La.R.S. 32:232 without meaning.
We turn now to the question of damages for personal injuries. Plaintiff is a forty-two year old male school teacher, who taught the fifth, sixth, and seventh grades for some eight years. At the time of trial he was still employed in that profession, in the same capacity, and by the same School Board.
Initially, he complained of pain in the right thumb, right hand, and knees as a result of the accident. There is no objective evidence of trauma to the thumb and hand, and no medical evidence[3] of trauma to the knees. There was, however, some evidence of osteo-arthritic changes in the thumb of the right hand which, according to the medical evidence, were of long-standing, and not caused by the accident.
Plaintiff’s principal claim on the inadequacy of the award has to do with the state of anxiety which he claims was caused or brought about as a result of the accident. We find that the medical testimony does not establish the accident as the cause of plaintiff’s anxiety but instead, only moderately, if at all, aggravated a pre-existing condition.
The trial court found that the personal injuries suffered by the plaintiff were minimal. As a result of having been slightly shaken up in the accident, Mr. Bates experienced “mild to moderate anxiety and nervousness.” This finding is supported by the testimony of one of the expert witnesses, Dr. James J. Fournet, a general practitioner, who was plaintiff’s treating physician. Doctor Fournet testified that Mr. Bates did have a normal anxiety type reaction, which is “not at all unusual for anybody that has been ‘shook-up’ or involved in an accident,” and that the degree of this condition was only “mild to moderate, at the outside.”
Furthermore, both Doctor Fournet and the other expert witness, Dr. Giles R. Morin, a psychiatrist, testified that the condition complained of by plaintiff was one *1174 which, for the most part, existed prior to the accident. Mr. Bates had reported similar nervous symptoms to Doctor Fournet prior to the accident. Doctor Morin found plaintiff to be primarily schizoid (a quiet, introspect, somewhat withdrawn individual, with accompanying anxieties), and such a personality “is usually developed within the first six years of life.” After several visits and a thorough examination of Mr. Bates, Doctor Morin was of the opinion that, if the accident contributed at all to plaintiff’s condition, it did so only slightly.
We add also that, although plaintiff alleged a post traumatic neurosis or conversion reaction, the medical evidence is conclusive that he does not experience either of these phenomena.
Even though a tort-feasor takes his victim as he finds him, before recovery can be granted for the aggravation of a pre-existing condition, plaintiff must establish by a preponderance of the evidence a causative link between the accident and his current status. The record is replete with evidence to sustain the trial court’s finding that the accident contributed only slightly, if at all, to plaintiff’s condition. Under these circumstances, the $2,000.00 award is not an inappropriate grant for plaintiff’s personal injuries caused by the accident.
Plaintiff correctly calls our attention on appeal to the fact that the trial judge assessed expert witness fees in the sum of $125.00 per witness, whereas the judgment only includes such fees for one expert. Two medical experts testified, namely Doctors Fournet and Morin. We also note that the expert witness fee was included as part of the judgment. Under La.R.S. 13:3666, expert witness fees are taxed as costs. Accordingly, we will reduce the amount of the judgment to delete the $125.00 figure, and will fix the expert witness fees at the sum of $250.00, to be taxed as costs, and to be paid by defendants.
For the above and foregoing reasons, the judgment of the trial court is reduced from the sum of $4,310.76 to the sum of $4,185.76, and the expert witness fees are fixed at the sum of $250.00. In all other respects, the judgment of the trial court is affirmed. All trial court costs are assessed against defendants.
Costs on appeal are assessed one-half to plaintiff-appellant and one-half to defendants-appellees.

AFFIRMED, AS AMENDED.

.The pertinent part of La.R.S. 32:232 reads as follows:
“Whenever traffic is controlled by traffic-control signals exhibiting the words “Go,” “Caution,” or “Stop,” or exhibiting different colored lights successively at a time, or with arrows, the following colors only shall be used and said terms and lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
(1) GREEN alone, or GO:
(a) Vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection or an adjacent cross walk at the time such signal is exhibited.”

. La.R.S. 32:124 reads as follows:
“The driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building, shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway or driveway, and shall yield the right of way to any pedestrian as may be necessary to avoid collision, and shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.”

. Plaintiffs first treating physician, Dr. Richard M. Miers, did not testify.